IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION


- - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                         :
      Plaintiff,         :
                         : Case Nos. 3:24-cr-76
vs.                      :           3:10-cr-65
                         :
ALEXANDER B. EVANS,      :  <u>TRANSCRIPT OF SENTENCING AND</u>
                         :   <u>FINAL REVOCATION HEARING</u>
      Defendant.         :
- - - - - - - - - - - - X


                         Courtroom 242, Second Floor
                         U.S. Courthouse
                         131 East Fourth Street
                         Davenport, Iowa
                         October 9, 2025
                         9:03 a.m.


BEFORE:  THE HONORABLE STEPHEN H. LOCHER, District Judge


APPEARANCES:

For the Plaintiff:       MELISA KAY ZAEHRINGER, ESQ.
                         United States Attorney's Office
                         U.S. Courthouse
                         131 East Fourth Street, Suite 310
                         Davenport, IA  52801


For the Defendant:       WILLIAM L. BREEDLOVE, ESQ.
                         Breedlove Legal LLC
                         2103 16th Street
                         Moline, IL  61265


                 TONYA R. GERKE, CSR, RDR, CRR
                  United States Courthouse
                 111 Locust Street, Room 521
                   Des Moines, IA 50309

P R O C E E D I N G S

1

2          THE COURT:  Please be seated.

3      Good morning.  We're convened in United States versus

4  Alexander Evans.  There are two different case numbers that

5  we're proceeding under today because this hearing is

6  accomplishing two different goals.

7          First, it is a supervised release revocation hearing.

8  That's in Case Number 3:10-cr-65.  Then it's also a sentencing

9  hearing in a new case that was filed against Mr. Evans based on

10 much of the same conduct that led to the revocation proceeding.

11 That new case number is 3:24-cr-76.

12         The Government's represented today by Assistant United

13 States Attorney Melisa Zaehringer.

14         Ms. Zaehringer, is the Government ready to proceed?

15             MS. ZAEHRINGER:  Yes, Your Honor.

16             THE COURT:  Mr. Evans is present in person in the

17 courtroom with his attorney, William Breedlove.

18         Mr. Breedlove, is the defense ready to proceed?

19             MR. BREEDLOVE:  Yes.  Thank you, Your Honor.

20             THE COURT:  Mr. Evans, in the new case you've been

21 adjudicated guilty of one offense, receipt of child pornography,

22 by virtue of your guilty plea, so one of the purposes of today's

23 hearing is for me to determine the sentence for that offense.

24 Do you understand that part of what we're doing today, sir?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And on that case, Mr. Breedlove, have you

2   and Mr. Evans had an opportunity to read and discuss the

3   presentence report and any addendum thereto?

4          MR. BREEDLOVE:  We have, Your Honor.  I sent it to him

5   in the care of the Muscatine County Jail, and then we went and

6   discussed it, discussed the sentencing strategy, and those sorts

7   of issues, Your Honor.

8          THE COURT:  Does the defense have any objections to the

9   PSR?

10          MR. BREEDLOVE:  No objections to the PSR, Your Honor.

11          THE COURT:  Ms. Zaehringer, does the Government have

12   any objections to the PSR?

13          MS. ZAEHRINGER:  No, Your Honor.

14          THE COURT:  In that case, I will accept the PSR in its

15   entirety, and that includes, among other things, the total

16   offense level calculation of 37, criminal history category

17   calculation of V, and resulting advisory sentencing guidelines

18   range of 324 to 405 months' imprisonment.

19      Ms. Zaehringer, does the Government agree that that's the

20   guidelines range today?

21          MS. ZAEHRINGER:  Yes, Your Honor.

22          THE COURT:  Mr. Breedlove, does the defense agree with

23   that as well?

24          MR. BREEDLOVE:  We agree that's the correct range, but

25   we have significant reasons why you should depart, Your Honor.

1          THE COURT:  Understood.  So we'll come back to the

2   sentencing in a minute.  I want to talk about the supervised

3   release revocation provision first.

4          As it relates to the supervised release revocation, there

5   are nine alleged violations:

6          Number 1 alleges failure to report to the probation office.

7          Number 2 alleges failure to reside at approved residence.

8          Numbers 3 through 7 all allege new law violations but on

9   separate dates or instances.  3, 4, and 5 are all sex offender

10  registration -- allegedly sex offender registration violations,

11  second or subsequent offense; number 6 alleges new law violation

12  for receipt of child pornography; number 7 alleges new law

13  violation for possession of child pornography.

14         Number 8 alleges unauthorized internet access.

15         And number 9 alleges possession of sexually stimulating

16  material.

17         Those violations range from a grade A -- that's number 6 --

18  several B violations and also several C violations.

19         Mr. Breedlove, is the defense admitting or contesting the

20  alleged violations of supervised release?

21         MR. BREEDLOVE:  The defendant would admit them all,

22  Your Honor.

23         THE COURT:  All right.  Based upon that admission, I do

24  find by a preponderance of the evidence that Mr. Evans violated

25  the terms of his supervised release in each of the nine alleged

1  ways.

2       Because Mr. Evans was criminal history category II at the

3  time of his original federal offense for which he was on

4  supervised release and because the most serious violation is a

5  grade A violation, our calculation of the revocation

6  imprisonment range on the supervised release part of this is 15

7  to 21 months under section 7B1.4(a) of the sentencing

8  guidelines.

9       Ms. Zaehringer, does the Government agree that that's the

10  guidelines range on the revocation piece?

11            MS. ZAEHRINGER:  Yes, Your Honor.

12            THE COURT:  Mr. Breedlove, does the defense agree as

13  well?

14            MR. BREEDLOVE:  Yes, Your Honor.

15            THE COURT:  All right.  Mr. Breedlove, is there

16  anything that you think we need to take up before I hear from

17  each side on the appropriate disposition of these two cases?

18            MR. BREEDLOVE:  No, Your Honor.

19            THE COURT:  How about you, Ms. Zaehringer?

20            MS. ZAEHRINGER:  Nothing, Your Honor.

21            THE COURT:  In that case, Mr. Breedlove, I'll hear from

22  you first on Mr. Evans' behalf on the sentences that you believe

23  I should impose, both on the new case and on the supervised

24  release revocation case.

25            MR. BREEDLOVE:  Your Honor, if you look at paragraph 41

1    of the PSR for the sentencing portion, to be clear, circuit

2    precedent holds that that's the correct calculation, so I'm not

3    arguing that it shouldn't be the plus 5 as the calculation, but

4    if you read through the facts and what was actually happening

5    with this offense, this is the very bare minimum -- I mean, it's

6    exchanges, but it's not profiting -- it's not significant

7    profiting off of what he was doing, and so, again, while circuit

8    precedent holds that this is a plus 5, I don't think -- I don't

9    think that's the true intent of the behavior that this is

10   supposed to capture, so I would ask the Court to consider

11   reducing it based on that -- on paragraph 41.

12       Similarly, paragraph 43, whether or not there was use of a

13   computer -- at this point it's almost impossible to do anything

14   without a computer.  My coffee maker has a computer in it.  My

15   washing machine is connected to the internet.  My dishwasher is.

16   Everything has some connection to the internet, and I find it

17   hard to believe that there is any court -- federal court in the

18   country that's having somebody exchanging analog Polaroids of

19   child pornography at this point, and so I think paragraph 43 is

20   really no longer relevant in terms of offense conduct because

21   it's how everyone is doing everything.

22       And so for those reasons, I think paragraphs 41 and 43 the

23   Court should consider going down 7 -- 7 levels, if not the first

24   7, at least 6.

25       And then for the criminal history, one of his criminal

1  histories on paragraph 64 -- that was a credit-to-time-served

2  sentence, and so he gets 1 point for that.  He didn't really

3  understand he was pleading to imprisonment.  He understood he

4  was pleading to the probation, and so the part of that that was

5  credit time served when you look at the plea agreement is kind

6  of an add-on.  And his plea agreement does say that that would

7  be -- he understands that the recommendation from the prosecutor

8  in that case would be credit for time served, so he did sign

9  that.  I'm not saying that he didn't.

10       So it's not an argument that that 1 point isn't legally

11  correct, but my argument is it's, again, not really what the

12  points are supposed to capture, and so for that reason,

13  Your Honor, that 1 point makes a big difference because it would

14  drop him down to a category IV, and I think a more appropriate

15  range for my client based on what I think are the legally

16  accurate but perhaps overly aggressive-in-implication paragraphs

17  41, 43, and 64 would be to consider him as a category IV and

18  level 31.

19       Respectfully, my client would ask for 180 months as his

20  sentencing range.

21       As an additional, more traditional mitigating factor,

22  Your Honor, my client was discharged from a mental health

23  hospital less than 48 hours before all of this began -- all of

24  his problems began again.  He was suicidal.  He was dealing with

25  a lot of issues, and that led him down the same well-trodden

1   paths that he's been down before, and that's clear from his PSR;

2   that's clear from his criminal history.  The Court's well aware

3   of that from reading the record.

4        But he's not a predator.  He's not going out and trying to

5   harm people.  He is struggling with mental health and other

6   issues.  He's struggling with an obvious addiction to child

7   pornography and trying to overcome that, and I view it, frankly,

8   as no different than a drug addict.  There is something that he

9   is addicted to, and he is having trouble getting over that

10  addiction.  His brain runs down those paths whenever it has the

11  opportunity, and he needs to find some way to fix that.

12       That's not accomplished by any sort of additional time;

13  that's accomplished, hopefully, with age.  180 months will put

14  him much older, and hopefully he continues to age out of these

15  things, and, second, the programming that he can get -- and I'm

16  leaking a little bit into recommendations for prisons but

17  recommendations for programming that will allow him to address

18  those issues, cognitive behavioral therapy, those sorts of

19  issues that are better available at low and medium facilities.

20       Thank you, Your Honor.

21          THE COURT:  Thank you, Mr. Breedlove.

22       Mr. Evans, at this time I want to give you the opportunity

23  to speak to tell me anything you'd like me to know as I make my

24  sentencing decision.  You're under no obligation to say anything

25  today, but if you'd like to do so, I'll be glad to listen.

1       THE DEFENDANT:  Yes, Your Honor, I would like to.

2       As Mr. Breedlove just said, I struggle with a lot of mental

3   health issues and, being honest, a lot of physical issues as

4   well, and sometimes they both leak into the other side, one to

5   the other.  And so sometimes when I'm in extreme pain from my

6   fibromyalgia or my disc problems in my neck, it brings on more

7   of the depression, more of the anxiety because how am I going to

8   work; how am I going to do this; how am I going to do that?  So

9   it kind of leaks back and forth on each other, and part of the

10  problem with that is being able to manage that.

11      Well, as the Court can see, I don't manage well.  That's

12  just the fact of who I am so far in my life.  Maybe that's

13  probably been a bad thing, but I'm hoping that this will be kind

14  of an eye-opener now that I'll be facing a significant chunk of

15  time, and being the age I am, I feel like basically I'm not

16  going to have much of a life left, so I need to take that time

17  to get any kind of programming and especially try to get some

18  mental health treatment -- more.  I got some, but it wasn't

19  enough at the mental health ward at Genesis.

20      And since then -- since being in Muscatine County Jail,

21  actually I have been up on some of my medication for mental

22  health.  That would be my Abilify, and since upping that twice

23  now since being in Muscatine County, I have found that I am not

24  even remotely as anxious nor as depressed.  I can manage better.

25  Today I would have been, honestly, a wreck.  I would have been

1  over here shaking.  I would have been stuttering nonstop, and so

2  I notice a real difference.

3     So I think with that -- with the treatment to actually help

4  me overcome my addictions, I think that there's a real

5  opportunity for me to succeed and become a successful member of

6  the community.

7        THE COURT:  Thank you, Mr. Evans.

8        THE DEFENDANT:  Oh, and one last thing.  Mr. Breedlove

9  didn't bring it up, but I'd like to say something.  One of my

10  offense points is also from 15 years ago, and it was a deferred

11  judgment, and it was a marijuana case that I caught at the same

12  time that this would have all originally started, and it just to

13  me feels like -- I was smoking a little bit of pot trying to

14  self-medicate at the time, and I'd like to point that out, that,

15  you know, I'm failing miserably with that doing-it-on-my-own

16  thing.

17        THE COURT:  Understood, and I will take that into

18  account.

19     Ms. Zaehringer, let me hear from you on behalf of the

20  Government as to the sentence that you believe is appropriate in

21  the two cases.

22        MS. ZAEHRINGER:  Your Honor, we are arguing for the

23  high end of both the case at hand and as well as the violation.

24     This is a very aggravating case.  This defendant was on the

25  sex offender registry for the prior crime which is essentially

1  the same as this crime that we're here for today.  Back in 2009,

2  he downloaded over 1,500 images and over 200 videos containing

3  child pornography.  He was sentenced to 150 months.

4       While he was there, he did not attempt any rehabilitation.

5  In fact, while he was in prison, he continued to download and

6  view child pornography.  He used the educational computers to

7  store pictures of children and stories about the sexual

8  victimization of children.  He then altered clip art to make it

9  appear that children were being sexually abused, and then he

10  told the other inmates where, in fact, to find those images on

11  the computer so that they could then view that clip art.

12       He also received inappropriate information within the mail

13  system.  He possessed nude pictures of minors, and he refused to

14  participate in any sex offender treatment while in prison.

15       Then when he was released onto supervision, he didn't fare

16  any better.  He was revoked three times in the past for

17  violations which include unauthorized contact with minors, not

18  being truthful with probation, failure to reside at approved

19  address, failure to register as a sex offender, unapproved

20  association with a felon, failure to comply with the rules of

21  the RRC, not reporting to probation, unauthorized internet

22  access, and possession of sexually stimulating materials.

23       After all those three violations, he continued down this

24  path.  He was released on supervision this most recent time in

25  July of 2024.  As indicated by defense, he was then sent to a

1   mental hospital or he was in the hospital for mental issues for

2   approximately a week, and then immediately upon his discharge,

3   within a day he had obtained a phone and started receiving child

4   pornography from different websites that he bookmarked.

5       This continued until his arrest in September.  An

6   evaluation of that phone showed over 1,500 images of child

7   pornography.  The investigation then led to the seizure of

8   another phone that he had previously before he had gone to

9   prison for his prior violation, and that had over 100,000 images

10  of child pornography.

11      Certainly it is clear that this defendant is addicted to

12  child pornography.  He uses the internet.  I think that computer

13  enhancement is -- shows perfectly how these cases are

14  aggravating.  With the use of the computer, he obtained this

15  100,000 images.  Otherwise he would not have been able to

16  continue to bookmark and access all of this information, and so

17  he used the internet to his benefit in order to get all of this

18  different product that, in fact, he enjoyed.

19      As far as the enhancement for the trading of child

20  pornography, this case shows that the defendant had a WhatsApp

21  application on both of the cell phones, the one previous and the

22  most recent one, and that is where he chatted with other

23  individuals in order to get the particular content he was

24  interested in and providing other people the content they were

25  interested in, so that enhancement fully supports his conduct

1  here in this particular case.

2      In looking at his prior statements in the presentence

3  report, we see that he indicated that he would not go to sex

4  offender treatment.  While he was on supervision, he minimally

5  participated in sex offender treatment.  The B.O.P. discharge

6  summary from the defendant's term of imprisonment indicated that

7  he had risk factors of deviant sexual interest and sexual

8  preoccupation.  He said that he's a sex addict and that sexual

9  offending gives him a rush.

10      So looking at this defendant, he is a clear danger to the

11  community.  The pattern of history shows that he is going to get

12  out and re-offend again, so we are asking this Court to

13  incapacitate him for as long as possible, and we are asking for

14  the top-of-the-guideline sentence being 405 months.

15      Certainly this behavior is what is the underlying -- part

16  of the underlying revocation, and we are asking for 24 months on

17  that to be consecutive to the 405 months on this case.

18      Additionally, we are asking that the Court dismiss Count 2

19  of the indictment per the plea agreement.

20      We are asking for restitution in the amount of $3,000 for

21  each of the 19 victims.  As indicated, the presentence report

22  has 18 victims; however, we have received an additional one, and

23  so I'd like that noted in the presentence report, that there are

24  actually 19 series that are asking for restitution.

25      Thank you.

1              THE COURT:  Thank you, Ms. Zaehringer.

2         Mr. Breedlove, does the defense have any objection to

3    restitution for all 19 victims including the late-disclosed?

4              MR. BREEDLOVE:  No, Your Honor.  Those are appropriate.

5    We would ask, however, that the restitution be deferred until

6    his prison term is concluded because that affects his

7    programming abilities and other things within the B.O.P.

8              THE COURT:  I understand what's motivating the request,

9    and I'm not going to grant it, though, but I'll talk more about

10   that in a couple of minutes.

11        First, let me talk about the sentence itself, and I've

12   really got two different sentences to impose here.

13        First, on the new criminal case, there are, as everyone

14   knows, a list of factors in section 3553(a) of Title 18 of the

15   United States Code that I have to consider.  I have thought

16   about all of those factors, and I know that my responsibility

17   ultimately is to determine the sentence that is sufficient but

18   not greater than necessary to comply with those purposes in

19   choosing the appropriate sentence.

20        On the supervised release revocation case, I have to

21   consider many, but not all, of those same factors with the same

22   goal in mind, and I've done that on the supervised release

23   revocation case as well.  I'm going to talk about the factors

24   together.

25        The first is the nature and circumstances of the offense,

1  and here it's unquestionably a serious offense.  Receipt and

2  possession of child pornography is always serious.  The victims

3  in these videos and images were far, far too young to consent to

4  this sort of thing, and every time a new person comes into

5  possession of it or receives it, that is being victimized again.

6  Someone else is, in essence, invading their privacy, and you can

7  see from the victim impact materials that we got in this case

8  how that trauma carries with them throughout their lives.

9       So it's unquestionably a serious offense, particularly so

10  here when you look at the number of images and the nature of the

11  images.  We just have thousands and thousands of images

12  including infants, toddlers, 4- to 7-year-olds, other children,

13  the -- the sophistication with which Mr. Evans was finding and

14  organizing and storing these materials, the fact that he had

15  multiple different devices to get it.

16       There's been reference to sex addiction or other related

17  addiction concepts, and that certainly is an accurate assessment

18  here.  I think there's some sort of pathological addiction that

19  Mr. Evans can't seem to get over, and that leads into his

20  history and characteristics.

21       On the one hand, Mr. Evans, I recognize what a difficult

22  childhood you had.  You experienced incredible trauma.  You also

23  have physical health issues now, I know, all sorts of mental

24  health issues:  ADHD, PTSD, bipolarity, depression, borderline

25  personality disorder, OCD.  I mean, every single thing a person

1 can have to create chaos in their brain you've got, and so in

2 some sense I understand why you end up being attracted to things

3 that you're not supposed to be attracted to, but, still, that's

4 the problem.  When we've got repeat, recurring conduct like we

5 have here, it calls for a more serious sentence.

6 So that end, like Ms. Zaehringer, I'm concerned about the

7 fact that Mr. Evans when he was in B.O.P. custody last time

8 didn't do much to take advantage of opportunities for substance

9 abuse treatment and sex offender treatment and other treatment

10 and rehab opportunities.  The same thing was true on supervised

11 release.  We tried to give opportunities, and to the extent he

12 took advantage of them, it was only in a very, very limited

13 capacity.

14 And speaking of supervised release, this is relevant in

15 both cases.  The fact that there were three prior revocations

16 before this one is really relevant.  It's just this nonstop

17 pattern of inability or refusal to follow rules plus engaging in

18 really, really dangerous and troubling behavior.

19 When I look at Mr. Evans' criminal history, it goes all the

20 way back to -- not even counting juvenile adjudications, it goes

21 all the way back to 2001:  harassment, criminal mischief.  I

22 accept that the drug possession charge was not very serious in

23 the overall scheme of things, but the 2009 conviction for

24 receipt of child pornography certainly was.  Then after

25 Mr. Evans gets out, we've got multiple violations for sex

1  offender registration violations -- multiple convictions, I

2  should say, so it's just a nonstop problem.

3      And that gets to the other factors like reflecting the

4  seriousness of the offense, promoting respect for the law, and

5  providing just punishment.

6      And, of course, I have to consider the sentencing

7  guidelines range itself when imposing a sentence.  I don't start

8  from the presumption that the guidelines range is reasonable.

9  Instead, I have to make an individualized assessment based on

10  the facts presented.

11      Here, based on all the facts and circumstances that I just

12  described, I do think the guidelines range is reasonable, and so

13  in the new criminal case, the 3:24-cr-76, I am going to impose a

14  bottom-of-the-guideline sentence of 324 months' imprisonment.

15  That's 27 years.  That's the sentence that I conclude is

16  sufficient but not greater than necessary to comply with the

17  goals and purposes set forth in section 3553(a).

18      I'll talk about the revocation judgment in just a minute,

19  but let me say a little bit more about the penalty in that new

20  case.

21      After Mr. Evans is released from custody, he will be placed

22  on supervised release for 5 years.

23      Mr. Breedlove, are there any objections to the proposed

24  terms of supervised release for Mr. Evans?

25          MR. BREEDLOVE:  I would object, Your Honor, to the --

1   not allowing him to use or possess computers, and I understand

2   why that's there, but if he's going to be released a few decades

3   from now -- as I started with, at this point our toasters have

4   computers in them.  I don't know how somebody can live now with

5   that condition, let alone in another 324 months, so I would ask

6   that condition be stricken.  I think it's resolved with other

7   issues, with allowing them access, those sorts of things, but

8   the straight prohibition and allowing probation to issue a

9   straight prohibition I think would make it virtually impossible

10   to live.

11         THE COURT:  All right.  Any other objections,

12   Mr. Breedlove?

13         MR. BREEDLOVE:  No.  Thank you, Your Honor.

14         THE COURT:  All right.  I'm going to overrule that

15   objection.  When you look at the extent to which Mr. Evans was

16   able to commit this offense through the use of computers and

17   cell phones and other electronic communications or data storage

18   devices, that -- this restriction I think is appropriate and

19   necessary, and I understand that it may have some implications

20   on a day-to-day level, but ultimately it's an appropriate

21   condition.

22      More generally, while on supervised release, Mr. Evans, you

23   must not commit another federal, state, or local crime.

24      You must not unlawfully possess or use a controlled

25   substance.

1    You will have to comply with the requirements of the Sex

2  Offender Registration and Notification Act as well as any state

3  sex offender registration laws.

4    You must not own, possess, or have access to a firearm,

5  ammunition, destructive device, or other dangerous weapon.

6    You will have to submit to an evaluation for mental health,

7  for substance abuse, and for sex offense-specific issues and

8  comply with recommended treatment in all of those areas.

9    You'll have to submit to polygraph testing as directed by

10  the probation office.

11    You must not have any direct contact with any child you

12  know or reasonably should know to be under the age of 18,

13  including in employment, without probation office approval.

14    You shall not view or possess any visual depiction of

15  sexually explicit conduct.

16    You must not use or possess any internet-capable device

17  without probation office approval.

18    As I've already mentioned, you cannot use or possess

19  computers, cell phones, or other internet-capable devices

20  without probation office approval.

21    You will have to comply with all sex offender laws for the

22  state in which you live and work.

23    You'll have to pay restitution.  I'll talk about that in a

24  minute.  Until restitution is paid, you must not apply for,

25  solicit, or incur debt without probation office approval.

1    You also have to provide complete access to your financial

2  information to the probation office.

3    And you'll have to submit to a search of your person and

4  property, and that includes, among other things, electronic

5  communications devices by the probation office if they have

6  reasonable suspicion to believe you violated a term of

7  supervised release.

8    In terms of restitution, I will impose restitution in the

9  amount of $3,000 for each of the 19 identified victims who have

10 made a request for restitution.  I conclude that $3,000 per

11 victim does adequately assess the causal relationship between

12 this defendant's conduct and the injury suffered by those

13 victims.

14   I'm not going to order any criminal fines on top of that

15 because I conclude that Mr. Evans does not have the ability to

16 pay.

17   I will enter a final order of forfeiture with respect to

18 the cell phones identified in the preliminary order of

19 forfeiture that I entered last month.

20   And I'll also order a special assessment in the amount of

21 $100 for the one count of conviction.

22   I'm going to talk about supervised release revocation in a

23 minute.

24   But, first off, Ms. Zaehringer, can you remind me?  The

25 Government is moving to dismiss just Count 2; correct?

1          MS. ZAEHRINGER:  Yes.

2          THE COURT:  That's the only other count?

3          MS. ZAEHRINGER:  Yes, Your Honor.

4          THE COURT:  All right.  Count 2 will be dismissed

5   consistent with the terms of the parties' plea agreement.

6      And is there anything else other than appellate rights on

7   the sentencing side in the new case, Ms. Zaehringer, that you

8   think we need to cover?

9          MS. ZAEHRINGER:  No, Your Honor.

10         THE COURT:  All right.  Mr. Breedlove, what

11  recommendations would you like me to make to the Bureau of

12  Prisons with respect to placement or programming on the new

13  sentence?

14         MR. BREEDLOVE:  For programming, any and all

15  programming, specifically cognitive behavioral therapy.

16      In terms of prison requests, if he's classified as a low,

17  he would request Rochester, Minnesota, or Milan, Michigan; if

18  medium, Rochester or Pekin.

19         THE COURT:  All right.  I will recommend that he be

20  given the opportunity to participate in any available

21  programming including but not limited to cognitive behavioral

22  treatment programming, and I'll recommend placement in

23  Rochester, Milan, or Pekin to the extent consistent with

24  security classification.

25      Is there anything else, Mr. Breedlove, on the sentence in

1  the new case that you think we need to cover today other than

2  appellate rights?

3       MR. BREEDLOVE:  No.  Thank you, Your Honor.

4       THE COURT:  All right.  So let me turn then to the

5  supervised release revocation proceeding.  I've already talked

6  about the facts and circumstances that were relevant to the new

7  sentence.  Almost all of them are relevant here as well.  The

8  only difference is there's a slight restriction on what I can

9  consider.  We're not trying to punish as much when it comes to

10  supervised release revocation.  Instead, we're worried about

11  protecting the community and deterrence and things of that

12  nature.

13       Ultimately, given the number of prior revocations, given

14  Mr. Evans' consistent inability to operate within the rules and

15  restrictions that we've placed, I conclude that a 24-month

16  sentence is appropriate on the supervised release revocation

17  matter; however, I am going to impose it concurrent to the

18  sentence on the new case, so it will end up being 324 months

19  total.  That's 324 on the new sentence and 24 months concurrent

20  on the old case, Case Number 3:10-cr-65.

21       As a matter of administrative convenience, I'm not going to

22  impose any further supervised release in the old case, the

23  10-cr-65 case.  That way Mr. Evans is just on supervised release

24  in one case moving forward after he finishes serving his

25  sentence.  That will be the 24-cr-76 case.

1    Mr. Evans, you do have the right to appeal the sentences

2  that I've imposed both in your new case and in the supervised

3  release revocation case.  If you wish to appeal, you have to

4  file a written notice of appeal within 14 days with the United

5  States District Court for the Southern District of Iowa.  If you

6  cannot afford the costs of an appeal, including the costs of

7  your attorney, we will appoint one to cover those costs for you

8  at no expense to you.

9    Ms. Zaehringer, anything else we need to take up today?

10    MS. ZAEHRINGER:  No, Your Honor.

11    THE COURT:  Mr. Breedlove?

12    MR. BREEDLOVE:  No.  Thank you, Your Honor.

13    THE COURT:  All right.  This matter is adjourned.

14    (Proceedings concluded at 9:37 a.m.)

15

16
                C E R T I F I C A T E
17        I, Tonya R. Gerke, a Certified Shorthand Reporter of
   the State of Iowa and Federal Official Realtime Court Reporter
18  in and for the United States District Court for the Southern
   District of Iowa, do hereby certify, pursuant to Title 28 U.S.C.
19  Section 753, that the foregoing is a true and correct transcript
   of the stenographically reported proceedings held in the
20  above-entitled matter and that the transcript page format is in
   conformance with the regulations of the Judicial Conference of
21  the United States.
        Dated at Des Moines, Iowa, November 7, 2025.
22

23

                    /s/ Tonya R. Gerke
24                    Tonya R. Gerke, CSR, RDR, CRR
                    Federal Official Court Reporter
25